**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| CARL HURVICH, | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 25-CV-13424-AK |
| v. | ) | |
| UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES, and U.S. DEPARTMENT OF STATE, | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER ON**
**DEFENDANT'S MOTION TO DISMISS**

**ANGEL KELLEY, D.J.**

This lawsuit concerns multiple public records requests filed by Plaintiff Carl Hurvich to

Defendants United States Citizenship and Immigration Services ("USCIS") and the Department

of State ("DOS"), pursuant to the Freedom of Information Act ("FOIA"). Plaintiff argues that

Defendants, in violation of FOIA, 5 U.S.C. § 552, (1) failed to conduct a reasonable search; (2)

improperly withheld agency records; (3) failed to release reasonably segregable information; (4)

failed to make a timely determination; and (5) engaged in an unlawful pattern or practice of

FOIA noncompliance. [Dkt. 10]. Pending before the court is Defendant USCIS' Motion to

Dismiss Plaintiff's Amended Complaint for Lack of Subject Matter Jurisdiction. [Dkt. 15]. For

the following reasons, Defendant's Motion to Dismiss is **DENIED**.

I.      **BACKGROUND**

Plaintiff, Carl Hurvich, is the attorney for Pierre Alin Wagnac ("Wagnac"). [Dkt. 10 at 1

1

¶ 25].  Plaintiff submitted a FOIA request for Wagnac's entire A-file, via USCIS' online portal, which USCIS received on September 2, 2025. [Id. at 5 ¶ 27].  Plaintiff was attempting to retrieve a copy of Wagnac's approved I-130 application.  Wagnac's sister filed a Form I-130 for Alien Relative on Wagnac's behalf ("the Form I-130"), which was assigned Receipt No. SR0001752678 and had a priority date of approximately February 22, 2000. [Id. at 4 ¶¶ 19-20]. The Form I-130 was approved prior to Wagnac's sister's death in 2008.  Now, Wagnac wants to pursue humanitarian reinstatement of his Form I-130 and needs a copy of the approved Form I-130 to do so. [Id. at 1 ¶ 4].

On September 5, 2025, USCIS acknowledged receipt of Plaintiff's FOIA request and issued Control Number NRC2025409012. [Id. at 5 ¶ 28].  About two months later, on November 17, 2025, Plaintiff filed his first complaint. [Dkt. 1].  By letter dated November 19, 2025, two days after Plaintiff filed the original complaint, USCIS released Wagnac's A-File to Plaintiff. [Dkt. 16-1 ¶ 7].  Thirty-six pages were released in full; ten pages were released in part, and six were withheld in full. [Id.].  The information not released to Plaintiff was withheld pursuant to 5 U.S.C. § 552(b)(6), (b)(7)(C), and (b)(7)(E). [Id.].  The approved Form I-130 petition was not included in the production. [Dkt. 10 at 5 ¶ 29].   Plaintiff administratively appealed USCIS' withholdings on November 29, 2025. [Id. at 5 ¶ 31].

On advice of agency counsel, around December 18, 2025, Plaintiff submitted a subsequent request, which asked for the "[r]eceipt for I-130 petition filed by Marie Rose Felix on behalf of beneficiary Pierre Wagnac." [Dkts. 16-5 at 3; 10 at 5 ¶ 30].  The amended request included Wagnac's consent and his sister's death certificate. [Dkt. 10 at 5 ¶ 30].  By letter dated December 16, 2025, USCIS acknowledged Plaintiff's request. [Dkt 16-1 ¶ 12].  On December 23, 2025, USCIS issued a separate "No Records" response under Control No. SMP2025005688,

2

stating that no responsive records were located and that the requested records had been forwarded to the National Visa Center ("NVC"), under the control of DOS. [Dkt. 10 at 5 ¶ 32]. The agency denied several other requests as "duplicates." [Id. at 5 ¶ 33]. USCIS provided August 26, 2026 as an estimated completion date of the appeal. [Id. at 6 ¶ 34].

Along with its Motion to Dismiss, USCIS submitted an affidavit from Jarrod Panter ("the Panter Affidavit"), the Acting Associate Center Director and Chief FOIA Officer in the Freedom of Information and Privacy Act Unit, National Records Center, USCIS. [Dkt. 16-1]. In the Panter Affidavit, USCIS alleges that it "searched for the I-130 petition filed by Rose Felix on behalf of Mr. Wagnac," and the requested "petition is not with USCIS and cannot be located in our files or systems." [Id. ¶ 14]. USCIS further alleges that, after the I-130 Form was approved, NVC, a component of DOS, was responsible for processing the I-130 Form. [Id.].

In an affidavit submitted by Plaintiff ("the Kaplan Affidavit"), immigration attorney Michael Kaplan alleges that he has reviewed copies and records of approved I-130 forms, which USCIS produced in response to FOIA requests. [Dkt. 23-1 ¶ 4]. The Kaplan Affidavit further states that, based upon his experience, USCIS "retains or can retrieve copies of the Form I-130 itself and/or related petition records, notices, receipt records, adjudicative materials, supporting documents, or other records reflecting USCIS's possession and retention of petition-related information, even after a case has been sent to NVC." [Id. ¶ 5].

On January 14, 2026, Plaintiff submitted a related FOIA request to DOS seeking the Form I-130. Along with the DOS FOIA request, Plaintiff submitted a death certificate for Wagnac's sister. [Dkt. 10 at 6 ¶ 35]. On February 5, 2026, DOS responded to Plaintiff and stated that they needed a death certificate to process the request, even though this was already submitted. [Id. ¶ 36]. Neither USCIS nor DOS issued a determination within twenty business

3

days. [Id. ¶ 37].

Defendant USCIS filed a Motion to Dismiss on January 30, 2026. [Dkt. 8].  As of right, Plaintiff amended his complaint on February 13, 2026. [Dkt. 10].  In the Amended Complaint, Plaintiff brings five claims pursuant to 5 U.S.C. § 552: (1) Failure to Conduct a Reasonable Search (5 U.S.C. § 552(a)(3)(A)); (2) Improper Withholding of Agency Records (5 U.S.C. § 552(a)(3)(A), (4)(B)); (3) Failure to Release Reasonably Segregable Information (5 U.S.C. § 552(b)); (4) Failure to Make a Timely Determination (5 U.S.C. § 552(a)(6)(A)(i)); and (5) Unlawful Pattern or Practice of FOIA Noncompliance (5 U.S.C. § 552(a)(4)(B)). [Id.]. Defendant filed a Motion to Dismiss the Amended Complaint for lack of subject matter jurisdiction, arguing that Plaintiff's claims are moot. [Dkt. 15].

## II.    LEGAL STANDARD

Defendant USCIS moves to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1), asserting that Plaintiff's claims are moot because Defendant responded to Plaintiff's FOIA requests and administrative appeals.  In support of its Motion, Defendant relies upon the Panter Affidavit, which submits new and controverted factual allegations.

When a defendant alleges jurisdictional facts, and the jurisdictional issues cannot be separated from the merits of the case, a Rule 12(b)(1) motion may be transformed into a Rule 56 Motion for Summary Judgment. Gonzalez v. United States, 284 F.3d 281, 287 (1st Cir. 2002); Jones-Booker v. United States, 16 F. Supp. 2d 52, 58 n.9 (D. Mass. 1998) ("[I]f jurisdictional issues cannot be separated from the merits of the case, then consideration of matters outside the pleadings transforms the motion into one for summary judgment.").  A jurisdictional issue cannot be separated from the merits of the case "where the court's subject matter jurisdiction depends upon the statute that governs the substantive claims in the case." McLellan Highway

4

Corp. v. United States, 95 F. Supp. 2d 1, 5-6 (D. Mass. 2000).

In FOIA litigation, the adequacy of an agency's search and the propriety of its response are merits questions that are typically resolved on motions for summary judgment supported by detailed agency declarations. See Maynard v. C.I.A., 986 F.2d 547, 559-60 (1st Cir. 1993). Defendant's jurisdictional argument depends on whether it conducted an adequate search, maintained possession or control of responsive documents, and retained copies or electronic records after any transmission to NVC.  These determinations are governed by FOIA and go directly to the merits of Plaintiff's claim that Defendant failed to conduct a reasonable search in violation of 5 U.S.C. § 552(a)(3)(A).  Therefore, Defendant's Motion is appropriately reviewed under the motion for summary judgment standard.

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Courts are "obliged to [] view the record in the light most favorable to the nonmoving party, and to draw all reasonable inferences in the nonmoving party's favor." LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993).  Even so, courts ignore "conclusory allegations, improbable inferences, and unsupported speculation." Prescott v. Higgins, 538 F.3d 32, 39 (1st Cir. 2008) (quoting Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)).  A court may enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

## III.    DISCUSSION

Defendant maintains that the Court lacks subject matter jurisdiction over this dispute

5

because Plaintiff's claims are moot.  Defendant does not address Plaintiff's challenges to its withholding of records, the timeliness of its responses, or its alleged pattern or practice of FOIA violations.

Federal courts are of limited jurisdiction, and courts must ensure they have the constitutional and statutory authority to adjudicate a case. See Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994).  "The existence of subject-matter jurisdiction 'is never presumed,'" Fafel v. Dipaola, 399 F.3d 403, 410 (1st Cir. 2005) (quoting Viqueira v. First Bank, 140 F.3d 12, 16 (1st Cir. 1998)), and federal courts "have a duty to ensure that they are not called upon to adjudicate cases which in fact fall outside the jurisdiction conferred by Congress." Esquilín-Mendoza v. Don King Prods., Inc., 638 F.3d 1, 3 (1st Cir. 2011).  The party asserting federal jurisdiction is responsible for establishing that such jurisdiction exists. See Kokkonen, 511 U.S. at 377.

In this case, mootness is the jurisdictional bar at issue.  For an Article III court to have jurisdiction, "an actual controversy" must exist "at all stages of review, not merely at the time the complaint is filed." Steffel v. Thompson, 415 U.S. 452, 459 n.10 (1974).  "A case becomes moot . . . when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." Already, LLC v. Nike, Inc., 568 U.S. 85, 91 (2013) (per curiam) (quoting Murphy v. Hunt, 455 U.S. 478, 481 (1982)) (internal quotation marks omitted).  In other words, a case is moot if a court "may not provide any effectual relief to the potentially prevailing party." Matt v. HSBC Bank USA, N.A., 783 F.3d 368, 372 (1st Cir. 2015) (quoting Horizon Bank & Tr. Co. v. Mass., 391 F.3d 48, 53 (2004)) (internal quotation marks omitted).  Where a matter is moot, "dismissal of the action is compulsory." Redfern v. Napolitano, 727 F.3d 77, 83-84 (1st Cir. 2013) (quoting Maher v. Hyde, 272 F.3d 83, 86 (1st Cir. 2001)).

Defendant argues that the controversy is moot because it has already searched for and produced all of the responsive documents in its possession or control. "The adequacy of an agency's search for documents under FOIA is determined by a standard of reasonableness and depends upon the facts of each case." Maynard, 986 F.2d at 559. Defendant must demonstrate that its search was "reasonably calculated to uncover responsive documents." Id. at 564. If the agency does not supply sufficient evidentiary support for its search, then the requester may avoid summary judgment "merely by showing that the agency might have discovered a responsive document had the agency conducted a reasonable search." ACLU of Mass., Inc. v. United States Immigration & Customs Enf't, 448 F. Supp. 3d 27, 42 (D. Mass. 2020) (quoting Maynard, 986 F.2d at 560).

An agency may establish the adequacy of its search through affidavits, which must be "relatively detailed and nonconclusory"; "submitted by responsible agency officials"; and prepared "in good faith." Maynard, 986 F.2d at 559. Such a showing ordinarily requires affidavits describing "in reasonable detail the scope and method by which the search was conducted" and "describ[ing] at least generally the structure of the agency's file system which makes further search difficult." ACLU of Mass., 448 F. Supp. 3d at 42 (quoting Maynard, 986 F.2d at 599-60). Further, the affidavits should "set[] forth the search terms and the type of search performed, and aver[] that all files likely to contain responsive materials . . . were searched." ACLU of Mass., 448 F. Supp. 3d at 42 (quoting Oleskey v. U.S. Dep't of Defense, 658 F. Supp. 2d 288, 294 (D. Mass. 2009)).

Here, Defendant has not provided the type of detailed factual record required to establish the adequacy of a FOIA search. To demonstrate its search, Defendant exclusively relies upon the Panter Affidavit. In its entirety, the Panter Affidavit describes Defendant's search as follows:

"USCIS has searched for the I-130 petitioner by Rose Felix on behalf of Mr. Wagnac. This petition is not with USCIS and cannot be located in our files or systems." [Dkt. 16-1 ¶ 14]. Defendant does not identify the databases searched, the filing systems reviewed, the search parameters utilized, the search terms employed, the custodians consulted, or the methodology used to determine whether responsive records existed. Nor does USCIS explain how it determined that the requested records had been transferred to another agency or what efforts were undertaken to verify that conclusion.

Furthermore, Plaintiff has submitted the Kaplan Affidavit, which contains information that directly contradicts USCIS' statements. According to Kaplan, he has reviewed approved I-130 forms that were obtained from USCIS in response to a FOIA request, and "USCIS frequently retains or can retrieve copies of the Form I-130 itself and/or related petition records, notices, receipt records, adjudicative materials, supporting documents, or other records reflecting USCIS's possession and retention of petition-related information, even after a case has been sent to NVC." [Dkt. 23-1 ¶¶ 4-5]. Because this Court must view the record in the light most favorable to Plaintiff, and draw all reasonable inferences in Plaintiff's favor, a genuine dispute exists as to the material facts, and summary judgment is inappropriate.

IV.   **CONCLUSION**

For the foregoing reasons, Defendant USCIS' Motion to Dismiss [Dkt. 15] is **DENIED.**

**SO ORDERED.**

Dated: July 21, 2026                          /s/ Angel Kelley
                                              Hon. Angel Kelley
                                              United States District Judge

8